| | |
|---|---|
| STEPHEN R. LEGENDRE ET AL | CIVIL ACTION |
| VERSUS | No. 17-2162 |
| HUNTINGTON INGALLS INC. ET AL | SECTION I |

## ORDER AND REASONS

Before the Court is plaintiffs' motion[1] to remand. For the following reasons, the Court grants the motion and remands this matter to state court.

## I.

For over half a century, asbestos—prized for its durability and high-heat resistance—was widely used in shipyards. Mary Jane Wilde's father, husband, and brother worked in shipyards which meant that they were exposed to asbestos on the job.

Mary Jane, however, never worked in a shipyard. But that did not stop her from developing and then ultimately dying from mesothelioma. Before she passed away, Mary Jane filed suit in Louisiana state court against the shipyards where her relatives worked. Her suit alleged that she was exposed to asbestos each night when her relatives returned home from the shipyard and that those exposures caused her mesothelioma.

Huntington Ingalls ("Avondale"), a defendant in Mary Jane's lawsuit, tried to remove her case to this Court on the basis of federal officer removal jurisdiction. *See*

---

[1] R. Doc. No. 5.

*Wilde v. Huntington Ingalls, Inc.*, No. 15-1486, Dkt. 1 (E.D. La. 2015). 28 U.S.C. §

1442(a) permits a defendant to remove "[a] civil action . . . commenced in a State court

and that is against or directed to . . . any officer (or any person acting under that

officer) of the United States or of any agency thereof, in an official or individual

capacity, for or relating to any act under color of such office." In order to remove a

case under federal officer removal jurisdiction, a defendant must "show (1) that it is

a person within the meaning of the statute, (2) that it has a colorable federal defense,

(3) that it acted pursuant to a federal officer's directions, and (4) that a causal nexus

exists between its actions under color of federal office and the plaintiff's claims."

*Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017) (internal quotation marks

and alterations omitted).

Avondale based its removal on the allegation that the U.S. Maritime

Commission required Avondale to build ships with asbestos parts. Avondale

suggested that it had a colorable federal contractor defense on the grounds that the

United States government was responsible for the presence of asbestos at the

shipyard. *See Wilde v. Huntington Ingalls, Inc.*, No. 15-1486, 2015 WL 2452350, at

*1-8 (E.D. La. 2015).

Judge Fallon found that insufficient to justify removal. In particular, Judge

Fallon observed that Mary Jane's claims against Avondale did "not hinge on the fact

that Avondale possessed asbestos, as the mere possession of asbestos did not allegedly

cause [her] injury, but [she] rather claims that Avondale's failure to properly handle

the asbestos material caused her injury." *Id.* at *7. Therefore, Judge Fallon found

that Avondale could not demonstrate a sufficient causal nexus to support removal because Avondale could not demonstrate a causal relationship between the government's requirement that Avondale use asbestos and Avondale's supposedly-lax safety protocols. *Id.* at *6 (no causal nexus on failure to warn claims); *id.* at *7 (no causal nexus on remaining claims).

Avondale appealed the remand order to the Fifth Circuit. But the Fifth Circuit refused to intercede. The Fifth Circuit determined that Avondale could not demonstrate a likelihood of success on appeal because Avondale had shown neither a causal nexus nor a colorable federal defense. *See Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 714-17 (5th Cir. 2015). In response to Avondale's argument that Judge Fallon misinterpreted Mary Jane's complaint to center on Avondale's handling of asbestos (rather than the possession of asbestos), the Fifth Circuit noted that Mary Jane's characterization of her claims was binding due to the uncontroversial application of judicial estoppel. *Id.* at 715 & n.28 ("This concession binds Wilde in this and future litigation."). The case was then remanded to state court.

Mary Jane's case settled after remand. The settlement, however, purported to preserve the ability of Mary Jane's survivors to bring a wrongful death claim.

That brings us to the case presently before this Court. Mary Jane's surviving brothers—the Legendres—filed a wrongful death lawsuit in Louisiana state court. As with Mary Jane's prior lawsuit, the brothers' wrongful death claim seeks to recover from Avondale because it "failed to properly handle and control the asbestos

which was in [its] care, custody, and control." R. Doc. No. 1-1, at 4 ¶ 10. As the brothers' briefing explains, the brothers

> have not alleged liability on the part of Avondale from mere use of asbestos. In fact, mere use of asbestos *does not give rise to liability on the part of Avondale*, especially in a case where the allegations involve exposure to a family member of an Avondale employee whose exposure results not from the fact that Avondale used asbestos on its property but because Avondale did not provide protective clothing . . . and . . . require employees to change clothes before going home each day.

R. Doc. No. 5-1, at 3 (emphasis added).

Avondale removed the brothers' case to this Court pursuant to federal officer removal jurisdiction. The brothers now unsurprisingly move to remand.

## II.

A person seeking to remove a case on the basis of federal officer removal jurisdiction must demonstrate that "a causal nexus exists between its actions under color of federal office and the plaintiff's claims." *Zeringue*, 846 F.3d at 789. Under that requirement, the defendant must show "a causal connection between the charged conduct and asserted official authority." *Id.* at 793. The parties dispute whether Avondale can demonstrate a sufficient causal nexus.

## A.

Since 2015, the Fifth Circuit has given meaning to the causal nexus requirement in a trilogy of federal officer removal cases.

The first case in the trilogy, *Bartel v. Alcoa Steamship Co.*, 805 F.3d 169 (5th Cir. 2015), concerns claims brought by merchant mariners against companies that operated ships owned by the United States Navy. The naval vessels contained

asbestos, and the merchant mariners alleged that the operators were negligent for failing to warn them of the asbestos. (*Bartel* considered only negligence claims because the defendants waived raising the strict liability unseaworthiness claims as a basis for removal. *See id.* at 174.). The *Bartel* court, however, found no sufficient causal nexus between the presence of asbestos on the naval vessels and the negligence claims at issue. *Id.* (observing that "there is no evidence that the government ever issued orders of any kind, let alone orders relating to safety procedures or asbestos"). Therefore, *Bartel* affirmed the district court's remand order.

The next case in the trilogy is *Savoie v. Huntington Ingalls*, 817 F.3d 457 (2016). *Savoie* both expanded on and cabined *Bartel*. *Savoie* addressed claims brought by a shipyard worker against Avondale for exposure to asbestos at the shipyard. Avondale argued that the case was removable under federal officer removal jurisdiction because the federal government itself specified that Avondale build ships containing asbestos. *Savoie* was both a survival action and a wrongful death action when it was considered by the Fifth Circuit because the shipyard worker passed away shortly after filing his case in state court.

The *Savoie* court ultimately agreed with Avondale that there was a causal nexus between federally directed conduct and at least one of the claims. But the Fifth Circuit did not find a causal nexus with respect to *all* of the claims. Instead, the existence of a causal nexus turned on the nature of the particular claim.

With respect to the plaintiffs' wrongful death claim, the Savoie court determined that there was not a causal nexus. The court observed that wrongful

5

death claims in Louisiana could not be strict liability claims because wrongful death claims are governed by the law at the time the decedent passed away and Louisiana abolished strict liability in 1996. *Id.* at 464. Therefore, since the wrongful death claim was necessarily a negligence claim, the *Savoie* court followed *Bartel* and found no causal nexus. *Id.* at 463. Specifically, *Savoie* found an insufficient causal relationship between the government's mandated use of asbestos in the construction of ships and Avondale's safety precautions. *Id.* As Judge Costa explained,

> With respect to the negligence claims, we agree . . . that *the federal government's mandate of asbestos insulation did not cause the shipyard to engage in the challenged conduct.* Negligence claims typically involve allegations that the defendant acted unreasonably or failed to act when it would have been reasonable to take some additional measures. Most of the claims in this case are of the latter sort. . . .
> Just last year, we decided that nearly identical allegations of a failure to warn or take safety precautions concerning asbestos did not challenge actions taken under color of federal authority even though the government was responsible for the existence of the asbestos. *See Bartel*, 805 F.3d at 174. *Bartel* was brought against the operators of ships owned by the Navy. We explained that although the federal government had installed asbestos in the ships, it had not prevented the operators from warning plaintiffs about the dangers of asbestos or from adopting safety procedures to minimize the workers' asbestos exposure. *Id.* at 173-74. We thus affirmed the remand of the case to state court for lack of a causal nexus. *Id.* at 174-75.
> We are not persuaded by the Defendants' attempt to distinguish *Bartel* based on either the nature of the negligence claims alleged here or the degree of the shipyard's discretion. The Savoies' allegations are essentially the same as the ones made in *Bartel* alleging "failure to warn, failure to train, and failure to adopt procedures for the safe installation and removal of asbestos." *Id.* at 173. As in *Bartel*, *the shipyard has failed to demonstrate that its contracts with the government prevented it from taking any of these protective measures identified by Plaintiffs.* . . . At most, the Navy may have had the power to shut down projects that failed to comply with federal regulations, but the Navy neither imposed any special safety requirements on the shipyard nor prevented the shipyard from imposing its own safety procedures.
> The Savoies' negligence claims thus challenge discretionary acts of the shipyard free of federal interference. As a result, *the government's directions to*

*the shipyard via the contract specifications did not cause the alleged negligence, and those claims do not support removal.*

*Id.* at 463-64 (emphasis added).

The story, however, was different with respect to the survival action. Unlike wrongful death actions, Louisiana survival actions in asbestos cases are governed by the law in effect at the time of exposure. Accordingly, the *Savoie* plaintiffs also had a live strict liability claim at the time of removal. *Id.* at 464. That strict liability claim provided a basis for federal officer removal jurisdiction:

> The strict liability claims rest on the mere use of asbestos, and that use at the shipyard was pursuant to government directions via contract specifications. Unlike claims based on negligence, those based on strict liability do not turn on discretionary decisions made by the shipyard. . . .
> . . . .
> [A] causal relationship . . . exists . . . between the government's requirements that the shipyard use asbestos in constructing its Navy and Coast Guard vessels and Savoie's asbestos exposure while working on those same vessels. . . . [T]he shipyard was compelled to meet the government's detailed specifications for what products and materials could be used in the construction of its vessels. . . . [T]he government exercised supervision over the shipyard's work to ensure compliance with contractual requirements. . . . [T]he shipyard was contractually required to comply and could receive no payments until it certified that all contractual requirements had been met. Thus it is the government's detailed specifications, to which the shipyard was contractually obligated to follow, that required the use of asbestos that allegedly caused Savoie's death. This is enough to show a causal nexus between the . . . strict liability claims and the shipyard's actions under the color of federal authority.

*Id.* at 465-66.

The final case in the trilogy is *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017). *Zeringue* involved both strict liability and negligence claims against a variety of companies that were responsible for the plaintiff's exposure to asbestos both at sea and at the Avondale shipyard. Crane Company, a manufacturer of asbestos-containing parts for the U.S. Navy, removed the lawsuit on the basis of federal officer

removal jurisdiction. Crane argued that there was a causal relationship between the U.S. Navy direction to Crane to provide asbestos-containing parts and the plaintiff's products liability suit relating to those parts. The *Zeringue* court agreed:

> [I]f we were to decline to extend the protection of § 1442 to this case, in which the Navy directed Crane to provide parts, we would render irrelevant Congress's decision to allow the removal of suits for acts relating to any act taken under official authority. Again, we will not follow such a narrow, grudging interpretation of § 1442(a)(1). Crane has established a casual nexus.

*Id.* at 794 (internal quotation marks and footnotes omitted).

In so doing, however, the Fifth Circuit again reaffirmed the continue vitality of *Bartel*:

> Our recent holding in *Bartel v. Alcoa Steamship Co.* is not to the contrary. In *Bartel*, the Navy—not the contractors—supplied ships that contained asbestos to the defendants. The defendants argued that there was a causal nexus between their authority to operate the ships, derived simply from the Navy providing the ships, and the charged conduct of failing to warn of the dangers of asbestos, to train their crews in using asbestos-containing products, and to adopt procedures for the safe installation and removal of asbestos. The charged conduct was private conduct that implicated no federal interest. Because the very purpose of the causal nexus requirement is to ensure that removal only arises when a federal interest in the matter exists, an extension of § 1442 to allow those defendants to remove would have stretched the causal nexus requirement to the point of irrelevance.

*Id.* (internal quotation marks and footnotes omitted).

### B.

Under the framework set out by the *Bartel*, *Savoie*, and *Zeringue* trilogy, the claims at issue here do not give rise to federal officer removal jurisdiction.

Plaintiffs brings wrongful death claims against Avondale. Those claims sound in negligence for two reasons. First, they must thanks to Louisiana's abolition of strict liability. *See Savoie*, 817 F.3d at 464. Second, even if the wrongful death claims

are strict liability claims—and they are not—judicial estoppel would nonetheless preclude the plaintiffs here from abandoning the multiple representations in both state court and this Court that they are only pursuing negligence claims against Avondale. *See Wilde*, 616 F. App'x at 715 & n.28

Because the claims sound in negligence, *Savoie*'s discussion of negligence and wrongful death governs. Thus, Avondale must do more than merely demonstrate that the government required Avondale to use asbestos when building vessels for the government. *See Savoie*, 817 F.3d at 463 ("The Savoies' negligence claims thus challenge discretionary acts of the shipyard free of federal interference. As a result, the government's directions to the shipyard via the contract specifications did not cause the alleged negligence, and those claims do not support removal.").

At best, Avondale demonstrates that the federal government required Avondale to use asbestos when building ships. *See* R. Doc. No. 8, at 15-18. Under *Savoie*, the government's responsibility for the existence of the asbestos at the shipyard is insufficiently related to the negligence claims challenging Avondale's discretionary decisions regarding safety precautions to serve as the basis for federal officer removal. Therefore, although Avondale has preserved the argument that the Fifth Circuit's opinions in *Savoie* and *Bartel* are wrongly decided, *see* R. Doc. No. 8, at 12-13, this Court has no choice but to follow Fifth Circuit law as it currently exists and remand this matter to Louisiana state court.

**III.**

Accordingly,

**IT IS ORDERED** that the motion to remand is **GRANTED**.   This case is

**REMANDED** to the Civil District Court for the Parish of Orleans.

New Orleans, Louisiana, April 25, 2017.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**