# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHEN R. LEGENDRE** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-2162** |
| **HUNTINGTON INGALLS INC. ET AL.** | **SECTION I** |

## ORDER

Arguing that this Court's remand order was "patently erroneous," R. Doc. No. 30-1, at 7, because it "irreconcilably conflicts with express holdings by the Fifth Circuit," R. Doc. No. 30-1, at 5, and "disregard[ed]" statutory language, R. Doc. No. 30-1, at 6, Huntington Ingalls ("Avondale") moves[1] to stay this Court's remand order. Because a remand is presently likely regardless of however the Fifth Circuit rules, the Court denies the motion to stay.

## I.

This Court considers four factors when deciding whether to grant a stay pending appeal. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). First, whether the movant has made a strong showing that it will succeed on the merits of the appeal. Second, whether the movant will suffer irreparable harm absent a stay. Third, whether the balance of hardships—*i.e.*, the harm that the movant will suffer absent a stay balanced against the harm that the stay would impose on the other parties interested in the proceedings—favors a stay. Fourth, whether the public interest favors a stay.

---

[1] R. Doc. No. 30.

The first two factors of the stay analysis—likelihood of success on the merits and irreparable harm—"are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). And while it is not "enough that the chance of success on the merits be better than negligible," *id.* (internal quotation marks omitted), the Fifth Circuit has licensed a court to excuse a movant from making a strong showing of likelihood of success on the merits provided that the movant can demonstrate (1) "a serious legal question," (2) "the balance of equities heavily favors a stay," and (3) a "substantial case on the merits." *Patino v. City of Pasadena*, No. 17-20030, 2017 WL 477917, at *1 n.4 (5th Cir. 2017).[2]

## II.

This Court begins by examining whether Avondale can demonstrate a likelihood of success on the merits.

At the outset, the Court notes that its prior ruling—contrary to Avondale's occasional suggestion[3]—was not based solely on *Savoie v. Huntington Ingalls*, 817 F.3d 457 (5th Cir. 2016). Indeed, though the Court fully concedes that its prior order

---

[2] The parties dispute the propriety of issuing a stay of the remand order. The Court does not address that issue given its determination that a stay is not warranted. *See Humphries v. OneBeacon Am. Ins. Co.*, No. 13-5426, 2014 WL 1330034, at 1 n.8 (E.D. La. 2014).

[3] *Compare* R. Doc. No. 23, at 9 (remand opinion) ("Therefore, although Avondale has preserved the argument that the *Fifth Circuit's opinions in Savoie and Bartel* are wrongly decided, *see* [Avondale's brief], at 12-13, this Court has no choice but to follow Fifth Circuit law as it currently exists and remand this matter to Louisiana state court." (emphasis added)), *with* R. Doc. No. 30-1, at 4 (Avondale stay brief) ("Therefore, this Court remanded the case back to state court, concluding that it 'has no choice but to follow Fifth Circuit law [*Savoie*] as it currently exists.'" (alteration in original)).

could have been clearer on the point, the key case in the Court's reasoning is ultimately *Bartel v. Alcoa Steamship Co.*, 805 F.3d 169 (5th Cir. 2015). The lengthy focus on *Savoie* was due to the fact that *Savoie* carefully applies *Bartel*'s analysis to near-identical facts to the ones here.

*Bartel* is a significant hurdle to Avondale's argument that there is a causal nexus between Avondale's actions under color of federal office and the plaintiffs' claims. In particular, though *Bartel* deals with a slightly different fact pattern—the ship in *Bartel* was operated by a private contractor, whereas here the ship was built by the private contractor—the Court is not convinced those differences are material. In both instances, the contractor is being held liable for failing to warn its employees about asbestos that was present on the vessel (or alternatively, the structure under construction) at the behest of the government. And in both cases the defendants were "free to adopt the safety measures the plaintiffs now allege would have prevented their injuries." 805 F.3d at 174.[4] So even before the Court considers the *Savoie* panel's careful consideration of *Bartel* and *Bartel*'s application to a case with near-identical facts, *Bartel* itself seemingly forecloses the conclusion that Avondale can demonstrate a causal nexus. *See Blouin v. Huntington Ingalls Inc.*, No. 17-2636,

---

[4] At times, Avondale has tried to distinguish *Bartel* on the ground that the government did not direct the *Bartel* contractor to use asbestos. *Cf. Bartel*, 805 F.3d at 174 ("There is no evidence that the government ever issued orders of any kind, let alone orders relating to safety procedures or asbestos."). That argument ignores the historical reality that asbestos was widely used throughout naval vessels. Avondale's suggestion that the Navy could somehow ask a contractor to operate a naval vessel at sea for an extended period, but then somehow not implicitly ask the contractor to regularly have its employees interact with the asbestos, is nothing more than ahistorical fiction.

2017 WL 2628103, at *6 (E.D. La. 2017) ("In light of the nature of Plaintiffs' claims in this case, Avondale is not similarly situated to the removing defendant in *Zeringue*, but rather to the removing defendant in *Bartel*, which remains good law.")

Avondale argues that *Bartel* binds neither this Court nor the eventual Fifth Circuit panel because it applies case law predating the 2011 amendment to 28 U.S.C. § 1442 to interpret the federal officer removal statute.

This Court has no doubt that *it* is bound by *Bartel*. *Cf. Blouin*, 2017 WL 2628103, at *6 (observing that Avondale's "characterization" of *Bartel* "is inaccurate"). *Bartel* recites the proper statutory language, *see* 805 F.3d at 172, and then applies it. So this Court—as a federal district court—cannot ignore a precedential decision of the Fifth Circuit under Avondale's purported theory that the Fifth Circuit erred in *Bartel*.[5] And lest the Court have any doubt on that point, the *Zeringue v. Crane Co.* court's observation that the result in *Bartel* is consistent with the proper casual nexus analysis largely removes any discretion that this Court might have otherwise had to take a different approach. *See* 846 F.3d 785, 794 (5th Cir. 2017) ("Our recent holding in *Bartel* . . . is not to the contrary.").

---

[5] The order of the *Savoie* panel on rehearing, *see* 824 F.3d 468 (5th Cir. 2016), does not free this Court to dismiss *Bartel*. A decision of the Fifth Circuit indicating that the decision is not precedent on a certain issue does not license this Court to ignore prior precedential Fifth Circuit opinions. *See United States v. St. Clair*, 608 F. App'x 192, 194 n.2 (5th Cir. 2015) ("It is clear and obvious that a district court cannot diverge from a precedential opinion's holding, regardless of subsequent non-precedential decisions . . . ."); *cf.* J.R.R. Tolkien, *The Fellowship of the Ring* bk. 1, ch. 3 (1954) ("Do not meddle in the affairs of Wizards, for they are subtle and quick to anger.").

4

The more interesting question is how *Bartel* will bind the eventual Fifth Circuit merits panel. And though Avondale offers some arguments as to how the rule of orderliness applies in this case, R. Doc. No. 30-1, at 6, nowhere does Avondale address that the rule of orderliness has been the subject of some disagreement as of late. *See, e.g., United States v. Castillo-Rivera*, 853 F.3d 218, 221 n.1 (5th Cir. 2017) (en banc); *id.* at 227 (Higginbotham, J., concurring); *id.* at 232-37 (Smith, J., dissenting).

Given the ongoing debate regarding the rule of orderliness as well as the continuing questions about the precise effects of the 2011 amendment on the proper causal nexus analysis, this Court has a difficult time forecasting Avondale's prospects of success on the merits of the appeal. Nonetheless, the Court need not resolve that question to determine that Avondale can neither demonstrate a "strong" nor a "substantial" likelihood of success on the ultimate question of whether this case will be remanded.

In particular, even if Avondale can persuade the Fifth Circuit that this Court reversibly erred in its causal nexus analysis, Avondale has not yet demonstrated a colorable federal defense. *See, e.g., Blouin*, 2017 WL 2628103, at *7 ("The problem, however, is that this case is not one where the federal government's contracts, requirements, or specifications interfered with Avondale's ability to conform its conduct in accordance with the duties imposed under state law. . . . Avondale has no federal defense to Plaintiff's state law negligence claims."). So a remand is presently likely regardless of Avondale's potential success on its causal nexus appeal.

Avondale's claim to a colorable federal defense is based largely on *Zeringue*. *See* R. Doc. No. 30-1, at 2-3; R. Doc. No. 8, at 18-21. *Zeringue* is not a perfect match for this case. *Zeringue* analyzed design defect claims against Crane Company. *See* 846 F.3d at 788-89. There, Crane submitted evidence that the valves were built to Navy specifications directing the use of asbestos. *Id.* at 791. By contrast, this case deals with a shipyard's failure to warn workers about the dangers of take home asbestos as well as the shipyard's negligence for failing to institute proper safety measures to prevent workers from taking asbestos home with them. *See* R. Doc. No. 23, at 9-10 (noting that claims against Avondale are not strict products liability claims); *see also Blouin*, 2017 WL 2628103, at *7 ("Avondale's treatment of the federal defense issue in briefing tracks *Zeringue* nearly verbatim but *Zeringue* was decided on claims specific to a manufacturer that followed government specifications when incorporating asbestos into its design. For purposes of a federal defense, Avondale is not similarly situated to the manufacturer in *Zeringue* and the nature of the claims against Avondale are substantively different than the claims in *Zeringue* that drove the panel's decision as to removal.").

The distinction between the claims at issue in *Zeringue* and the claims at issue here matters. The elements of a federal contractor defense in a failure to warn case are not identical to the elements of a federal contractor defense in a strict liability design defect case. To show a federal contractor defense in a design defect case, a manufacturer must show "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the

6

supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Zeringue*, 846 F.3d 790. Meanwhile, to show a federal contractor defense in a failure to warn products liability case, a defendant must show that the "(1) the federal government exercised discretion and approved warnings for the product; (2) the warnings the defendant provided about the product conformed to the federal government specification; and (3) the defendant warned the federal government about dangers known to the defendant but not the government." *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010).

Thus, unlike in *Zeringue*—where the contractor need only make a colorable allegation that it was required to use asbestos—here Avondale needs to allege that that the government *either* (1) precluded Avondale from providing any asbestos warnings at all or (2) dictated or approved a particular asbestos warning used or provided by Avondale. *See Sawyer v. Foster Wheeler LLC*, ___ F.3d ___, 2017 WL 2680581, at *4 (4th Cir. 2017) ("[T]he government need not prohibit the contractor from providing additional warnings; the defense applies so long as the government dictated or approved the warnings that the contractor actually provided.").

Alternatively—because only one claim need be removable for federal officer jurisdiction to be proper—Avondale could also demonstrate a federal contractor defense to plaintiffs' negligence claims with respect to Avondale's safety program by demonstrating that (1) the federal government exercised its discretion to approve a particular safety program regarding asbestos, (2) Avondale followed that safety

program, and (3) Avondale warned the federal government about dangers known to the defendant but not the government. *Cf. Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).

Yet Avondale focuses the relevant sections of its notice of removal, R. Doc. No. 1, at 5 ¶ 12, and its brief opposing remand, R. Doc. No. 8, at 21-23, entirely on the proposition that the government required Avondale to use asbestos when constructing ships. Now that is likely true, but that neither alleges that the "federal government exercised discretion and approved" any warnings provided by Avondale regarding asbestos, *Jowers*, 617 F.3d at 352, nor that the federal government dictated or approved any particular safety program by Avondale regarding asbestos. Thus, Avondale has failed to allege and argue a core element of the federal contractor defense: whether the government exercised any discretion regarding asbestos warnings or shipyard asbestos safety procedures in the first places. And Avondale cannot hope to demonstrate a colorable federal defense if it does not even allege or argue a core element of the applicable federal contractor defenses in this matter.

That failure distinguishes this case from *Zeringue*. *Zeringue* dealt with a situation where the contractor alleged the correct elements of the federal contractor defense, and then the Fifth Circuit examined what sort of evidence a defendant needs to put forward to show that the defense is colorable. *See* 846 F.3d at 792 ("[D]efinitive proof is not necessary for removal, and the military specifications and affidavits do suffice as a not-insubstantial and non-frivolous basis upon which Crane may assert government-contractor immunity.") By contrast, though the record here has some

8

suggestion that the federal government may have at the very least made recommendations regarding asbestos precautions, *see* R. Doc. No. 8-1, at ¶ 15, and that there was a contemporaneous industrial hygiene program, *see* R. Doc. No. 8-1, at ¶ 17, Avondale has neither alleged nor argued that any such programs satisfy the first prong of the relevant *Boyle* analysis.

Given that this Court can only decide the motion to remand and the motion to stay "on the basis of the issues adequately raised, and the arguments sufficiently made," *Savoie*, 824 F.3d at 469, and the arguments and allegations raised by Avondale do not satisfy the first prong of the *Boyle* analysis for the claims at issue here, the Court concludes that Avondale has neither demonstrated a strong nor a substantial case that this Court ultimately has jurisdiction. Therefore, Avondale has not met its burden of showing that a stay is warranted. *See Nken*, 556 U.S. at 434.

## III.

Accordingly,

**IT IS ORDERED** that the motion to stay is **DENIED**.

New Orleans, Louisiana, July 6, 2017.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**